UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:

Mayco Plastics, Inc.,

      Debtor.

_____/

Omega Tool Corporation,

      Plaintiff,

v.

Alix Partners, LLP, a Michigan limited liability
company; Robert Roberts, an individual;
Richard S. Abbey, an individual;
Robert Fines, an individual; Thomas Littman,
an individual; Steven W. Olmstead, an individual;
Kirtland Capital Partners, III L.P.; and PNC Bank, N.A.,

      Defendants.

_____/

Case No. 06-52727
Chapter 11
Hon. Phillip J. Shefferly


Adversary Proceeding
No. 09-05328-PJS

## OPINION CONTAINING PROPOSED CONCLUSIONS OF LAW GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

### I. INTRODUCTION

Omega Tool Corporation ("Omega") filed a first amended complaint in the United States

District Court for the Eastern District of Michigan against five individuals and five business entities

arising out of non-payment by Mayco Plastics, Inc. ("Mayco") of amounts that it owes to Omega

for plastic injection molds that Omega supplied to Mayco. Mayco used the molds to produce plastic

injected molded parts for original equipment manufacturers and tier one suppliers in the automotive

industry. On July 28, 2009, Omega voluntarily dismissed two of the business entities (Kirtland

Capital Partners, II L.P. and Kirtland Capital Partners, IV L.P.) as defendants. All five individual defendants and two of the remaining business entity defendants have moved to dismiss the first amended complaint under Fed. R. Civ. P. 12(b)(6).[1] This opinion addresses all of their motions. For the reasons set forth in this opinion, the Court concludes that the Defendants' motions to dismiss should be granted as to all of Counts I through III and V through VII of Omega's first amended complaint, and granted in part and denied in part as to Count IV of Omega's first amended complaint.

## II. JURISDICTION

On November 25, 2008, Omega filed this action in the United States District Court for the Eastern District of Michigan, Case No. 08-14914. On June 25, 2009, the Honorable Nancy G. Edmunds, United States District Judge, entered an Opinion and Order Granting Defendants' Motion for Referral to Bankruptcy Court Pursuant to L.R. 83.50 Motion [19, 22] ("District Court Opinion"). The District Court Opinion held that Omega's action is a non-core proceeding related to a bankruptcy case. Therefore, this Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334(b) and 157(a) and (c). Fed. R. Bankr. P. 9033(a) provides that in non-core proceedings heard pursuant to 28 U.S.C. § 157(c)(1), the bankruptcy judge shall file proposed findings of fact and conclusions of law. Local District Rule 83.50(a)(3)(B) also provides that in a non-core related proceeding under 28 U.S.C. § 157(c), absent consent of the parties, the bankruptcy judge will conduct hearings and file proposed findings of fact and conclusions of law and a proposed order or judgment with the bankruptcy clerk.

---

[1] The third remaining business entity defendant, PNC Bank, did not move for dismissal or join in the dismissal motions currently before the Court.

Ordinarily, the consent or absence of consent by the parties to have the bankruptcy judge enter orders or judgments is made known very early in an adversary proceeding commenced in the bankruptcy court. Fed. R. Bankr. P. 7012(b) provides that a responsive pleading in an adversary proceeding shall admit or deny the allegation that the proceeding is core or non-core. If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgments by the bankruptcy judge. The rule further provides that in non-core proceedings, final orders and judgments are not entered on the bankruptcy judge's order except with the express consent of the parties.

In this adversary proceeding, no statement was filed by any of the parties under Fed. R. Bankr. P. 7012(b) because Omega began its action in the United States District Court. Therefore, the complaint and subsequent pleadings filed in the United States District Court simply did not address whether this proceeding is a non-core proceeding related to a bankruptcy case, and whether or not the parties consent to have the bankruptcy judge enter orders and judgments. There was no need to do so. However, after Judge Edmunds referred this non-core related proceeding to the bankruptcy court, this Court inquired whether the parties to this adversary proceeding consent to have this bankruptcy judge enter orders and judgments under 28 U.S.C. § 157(c)(2) and Local District Rule 83.50(a)(3)(A). At a hearing on January 7, 2010, all of the parties to this adversary proceeding did not consent to the bankruptcy judge entering orders or judgments. Accordingly, because the parties do not consent to have the bankruptcy judge enter orders or judgments in this non-core proceeding, this Court must instead file proposed conclusions of law and a proposed order pursuant to Fed. R. Bankr. P. 9033 and Local District Rule 83.50(a)(3)(B). This opinion constitutes this Court's proposed conclusions of law.

## III. FACTS

For purposes of the defendants' motions to dismiss, the Court accepts as true the following allegations in Omega's first amended complaint filed on February 13, 2009 (U.S. District Court case docket entry no. 18).

Omega is a Canadian corporation that does business in Michigan. Omega manufactures plastic injection molds. Mayco was an automotive supplier that purchased molds from Omega that it used to produce production parts that it supplied for original equipment manufacturers such as Chrysler and tier one suppliers such as Lear Corporation (collectively referred to as the "Customers"). Although Omega supplied the molds to Mayco, the Customers would typically purchase and own the molds. As a result of this tiered system, Customers would typically pay suppliers like Mayco for the molds with the expectation that Mayco would pass the payments through to its suppliers like Omega. Instead of paying Omega with the funds paid by the Customers to Mayco, Mayco retained them and used such funds for other operating expenses. When Omega discovered this breach, Omega threatened to stop making molds for Mayco. By August 8, 2005, Mayco owed Omega $8.8 million for molds it had ordered from Omega.

On August 8, 2005, Omega and Mayco entered into an agreement ("Repayment Agreement") for Mayco to pay down the debt it owed to Omega, while Omega would continue to supply Mayco with the molds that it required. Mayco breached the Repayment Agreement, leaving Omega short on working capital. As a result, in November, 2005, Omega factored approximately $2,251,000.00 of Mayco's receivables to a factoring company, NatExport. Mayco agreed to pay the factored invoices directly to NatExport.

-4-

On February 28, 2006, Omega learned that Mayco had received nearly $5.4 million in pass through payments from its Customers since the time that Omega had factored the Mayco receivables to NatExport. Despite this fact, Mayco failed to pay NatExport. Shortly after that, Omega learned in March, 2006 that Mayco had hired bankruptcy counsel and was threatened with insolvency. Because of those facts, Omega sent a letter to Mayco on March 28, 2006, demanding that Mayco provide it with adequate assurance of future performance. When Mayco failed to provide Omega with adequate assurance of future performance, Omega sent a letter to Mayco on April 26, 2006, repudiating the contract that Omega had with Mayco for the sale of molds.

After Omega repudiated the contract, it entered into negotiations with Mayco, Kirtland Capital Partners, III L.P. ("Kirtland"), the controlling shareholder in Mayco, and PNC Bank ("PNC"), Mayco's secured lender. Representatives from Mayco told Omega that Kirtland and/or PNC had agreed to infuse equity into Mayco, contingent upon Mayco resolving things with Omega and ensuring that Omega would continue to ship molds to Mayco. Mayco's chief operating officer, Robert Roberts ("Roberts"), its chief executive officer, Robert Fines ("Fines"), Kirtland and PNC began negotiating an agreement with Omega regarding the pay down of Mayco's debt to it. The negotiations included face-to-face meetings, numerous telephone calls, conference calls and e-mails exchanged between, on the one hand, Omega's president, Dave Cecchin ("Cecchin"), and its vice president of finance, Enzo Pappini ("Pappini"), and on the other hand, Roberts, Fines and representatives from Mayco's financial advisors, AlixPartners, LLP ("AlixPartners"), and PNC, including Richard Abbey ("Abbey").

The negotiations led to Omega and Mayco entering into a Continuing Relationship Agreement ("CRA") on April 28, 2006. The CRA required Mayco by fixed dates to remit to Omega

any post-CRA pass through payments that Mayco received from its Customers. Further, the CRA required Mayco to deliver a promissory note to Omega with a fixed schedule of payments for the outstanding debt that Mayco already owed to Omega. From May to July, 2006, Mayco made ten weekly payments on the promissory note, and also paid Omega one post-CRA pass through payment received by Mayco from its Customers in the amount of $275,973.00.

From May, 2006 through the end of July, 2006, Cecchin and Pappini had periodic contact with Roberts and Abbey regarding the payments required by Mayco under the CRA. In July, 2006, Pappini contacted Roberts and Abbey several times to find out whether Mayco had received any post-CRA pass through payments from its customers. At no time during those discussions did Roberts, Abbey, or any other representative from Mayco, Kirtland, or AlixPartners inform Omega that Mayco had received any post-CRA pass through payments. At the end of July, 2006, Cecchin and Pappini learned that Mayco had received $1.46 million of pass through payments from its Customers after entering into the CRA, but had breached the CRA by diverting those pass through payments to its own use.

On September 12, 2006, Mayco filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On the petition date, Mayco owed Omega approximately $10.5 million. Of that amount, in excess of $6.9 million consisted of money that Mayco had received as pass through payments from its Customers. On January 12, 2009, the Court entered an order confirming Mayco's liquidating plan of reorganization.

## IV. OMEGA'S FIRST AMENDED COMPLAINT

Omega's first amended complaint contains seven separate counts. Count I alleges tortious interference with the contract between Mayco and Omega. The contract identified in Count I is the

CRA. Count I alleges tortious interference by several individuals and entities including Roberts and Fines, both of whom were officers of Mayco. Count I also alleges tortious interference by another individual, Thomas Littman ("Littman"), who is identified in paragraph 54 of the first amended complaint only by stating that he is "of Kirtland." Count I also alleges tortious interference by two of the employees of AlixPartners, Abbey and Steven Olmstead ("Olmstead"). Paragraph 54 of the first amended complaint describes Olmstead as "of Alix Partners," but also alleges that he served as acting president of Mayco. Count I also alleges tortious interference by Kirtland, AlixPartners and PNC.

Count II alleges tortious interference with the CRA by PNC.

Count III alleges tortious interference with a business relationship or expectancy between Omega and Mayco. The specific business relationship or expectancy identified in this count consists of Omega's expectancy of the post-CRA pass through payments to be made by Mayco to Omega under the CRA. Count III seeks relief against Roberts, Littman, Fines, Abbey, Kirtland, Olmstead, AlixPartners and PNC.

Count IV alleges fraudulent misrepresentation by Roberts, Abbey, Kirtland, AlixPartners and PNC.

Count V alleges fraudulent misrepresentation by Roberts, Fines, Abbey, Kirtland, AlixPartners and PNC.

Count VI alleges conversion by Roberts, Littman, Fines, Abbey, Kirtland, Olmstead, AlixPartners and PNC.

Count VII alleges silent fraud by Roberts, Abbey, Kirtland, AlixPartners and PNC.

## V.  THE MOTIONS TO DISMISS

There are two separate motions to dismiss the first amended complaint.  Roberts and Fines, both officers of Mayco, together with Kirtland, the majority shareholder of Mayco, and Littman, an individual somehow related to Kirtland, have joined together in one motion to dismiss the first amended complaint.  For convenience sake, the defendants that filed this motion to dismiss will be referred to as the "Mayco Defendants."  A second motion to dismiss was filed by AlixPartners and its two employees, Abbey and Olmstead.  For convenience sake, the defendants that have joined together in this motion are referred to as the "AlixPartners Defendants."

Both the Mayco Defendants and the AlixPartners Defendants argue that, whether styled as tort or fraud, all of the counts in Omega's first amended complaint are in substance nothing more than Omega's causes of action against Mayco because of its breach of the CRA.  They assert that Omega's first amended complaint is an attempt to find some deep pockets to recover the amount owed to Omega by Mayco because Omega is unable to obtain a full recovery on its claim under Mayco's liquidating plan of reorganization.  The Mayco Defendants and the AlixPartners Defendants request that all seven counts against them be dismissed under Fed. R. Civ. P. 12(b)(6).

## VI.  APPLICABLE STANDARDS

Fed. R. Civ. P. 8(a)(2), incorporated by Fed. R. Bankr. P. 7008(a), requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  The purpose of this pleading standard is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). In deciding a motion to dismiss for failure to state a claim upon which relief may be granted, "[t]he court must construe the complaint in the light most favorable to the plaintiff, [and] accept all the factual allegations as true . . . . A court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001) (citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (internal quotation marks and citation omitted).

In Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009), the Sixth Circuit summarized the standard for evaluating a Rule 12(b)(6) motion:

> In Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 1974, 1965 (2007), the Supreme Court said that . . . to survive a motion to dismiss a complaint must contain (1) "enough facts to state a claim to relief that is plausible," (2) more than a "formulaic recitation of a cause of action's elements," and (3) allegations that suggest a "right to relief above a speculative level."

Fed. R. Civ. P. 9(b), incorporated by Fed. R. Bankr. P. 7009, establishes additional requirements for actions that are based upon fraud:

Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

The Sixth Circuit Court of Appeals reads the requirements of Rule 9(b) in conjunction with the principles embodied in Rule 8. Michaels Building Co. v. Ameritrust Co., N.A., 848 F.2d 674 (6th Cir. 1988). "[T]he purpose of Rule 9 is not to reintroduce formalities to pleadings, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." United States ex rel. Bledsoe v. Community Health Sys., Inc., 501 F.3d 493, 503 (6th Cir. 2007) (citing Michaels Building Co. v. Ameritrust Co., 848 F.2d at 679 ("[T]he purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant with fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading.")). This form of specific notice is necessary in order to fulfill the purported goals of Rule 9, which are: (1) to "ensure[ ] that defendants have the specific notice necessary to prepare a response[;]" (2) to "prevent[ ] prospective plaintiffs from engaging in fishing expeditions to uncover moral wrongs[;]" and (3) to "protect defendants' reputations against damage stemming from accusations of immoral conduct." Bledsoe, 501 F.3d at 503 n.11 (citations omitted).

Recently, the Sixth Circuit Court of Appeals reiterated its "long-standing holding that, under Rule 9(b), a plaintiff must allege the time, place, and content of the alleged misrepresentation". United States ex rel. SNAPP, Inc. v. Ford Motor Co., 532 F.3d 496, 504 (6th Cir. 2008) (internal quotation marks and citation omitted). However, the the Sixth Circuit Court of Appeals pointed out that the type of detailed allegations it requires under Rule 9(b) are to be

understood in terms of Rule 9(b)'s broad purpose of ensuring that a defendant is provided with at least the minimum degree of detail necessary to begin a competent defense. Essentially, [a complaint] should provide fair notice to [d]efendants and

-10-

enable them to prepare an informed pleading responsive to the specific allegations of fraud.

Id. (internal quotation marks and citations omitted).

## VII. ANALYSIS

### A.     Count I – Tortious Interference with a Contract

Under Michigan law, "[t]he elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." Health Call of Detroit v. Atrium Home & Health Care Services, Inc., 706 N.W.2d 843, 848-49 (Mich. Ct. App. 2005) (citations omitted) (recognizing that under Michigan law a distinction exists between tortious interference with a contract or contractual relations and tortious interference with a business relationship or expectancy).

Count I alleges the existence of a contract. The contract is the CRA. Count I also alleges that the Mayco Defendants and the AlixPartners Defendants were aware of the CRA and that Mayco breached the CRA. Count I also alleges in paragraph 58 that "upon information and belief," both the Mayco Defendants and the AlixPartners Defendants "wrongfully interfered with the CRA and caused Mayco" to breach the CRA. The first amended complaint does plead all of the elements of a cause of action for tortious interference. But it does so in a conclusory way, without any factual allegations as to what conduct makes up the tortious interference. Even though wrongful interference is pled, there simply are no facts alleged that make this claim plausible. Paragraph 58 of the first amended complaint admits as much when, instead of alleging facts that constitute wrongful interference, it states only that "upon information and belief" the defendants "wrongfully interfered." That bare assertion, made upon information and belief, is insufficient to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (stating that "Rule 8 . . . does

-11-

not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed me accusation") (citing <u>Twombly</u>, 550 U.S. at 555).

Moreover, to survive a motion to dismiss, Count I must not only allege wrongful interference, but must also allege that the wrongful interference was undertaken either by the Mayco Defendants or the AlixPartners Defendants for their own benefit, with no benefit to Mayco. "To maintain a cause of action for tortious interference, the plaintiff[ ] must establish that the defendant was a 'third party' to the contract or business relationship." <u>Reed v. Michigan Metro Girl Scout Council</u>, 506 N.W.2d 231, 233 (Mich. Ct. App. 1993) (internal quotation marks and citation omitted). When an officer or agent interferes with a contract between his own employer and a third party for the benefit of his corporation, he may not be found liable for tortious interference with a contract. <u>Id.</u> (citations omitted) Corporate officers or agents are liable for tortious interference with the corporation's contracts when "they act [ ] solely for their own benefit with no benefit to the corporation." <u>Id.</u> (citation omitted).

All of the allegations in Count I and in the entire first amended complaint alleging tortious interference relate solely to the actions of the Mayco Defendants and the AlixPartners Defendants as employees or agents of or financial advisors to Mayco. Nowhere does the first amended complaint allege that any of the Mayco Defendants or the AlixPartners Defendants acted solely for their own benefit, with no benefit to Mayco. The first amended complaint alleges in numerous places that it was Mayco that received the post-CRA pass through payments from its Customers and that Mayco failed to remit them to Omega under the CRA. The first amended complaint does not allege that any conduct of the Mayco Defendants or the AlixPartners Defendants in somehow interfering with Mayco's performance under the CRA was done to benefit either the Mayco

Defendants or the AlixPartners Defendants. Therefore, Count I of the first amended complaint does not state a cause of action against either the Mayco Defendants or the AlixPartners Defendants for tortious interference with a contract.

At the oral argument on the motion to dismiss, counsel for Omega stated that he has agreed to dismiss all of the individual defendants from Count I (as well as Count III), leaving only Kirtland, AlixPartners and PNC as defendants in Count I. To date, Omega has not filed a pleading memorializing such dismissal. In any event, the Court concludes that Count I contains only conclusory allegations of elements of a cause of action for tortious interference with a contract, but does not contain sufficient factual allegations to meet the <u>Twombly</u> standard that requires a plausible suggestion of a cause of action. Therefore, the Court concludes that Count I must be dismissed as to all of the Mayco Defendants and all of the AlixPartners Defendants.

B.    <u>Count II – Tortious Interference with a Contract</u>

Count II does not name either the Mayco Defendants or the AlixPartners Defendants and seeks no relief from them. Therefore, the two pending motions to dismiss do not address this count.

C.    <u>Count III – Tortious Interference with a Business Relationship or Expectancy</u>

Under Michigan law,

> [t]he elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.

<u>Health Call of Detroit v. Atrium Home & Health Care Services, Inc.</u>, 706 N.W.2d 843, 849 (Mich. Ct. App. 2005) (citations omitted).

"The intentional interference must be improper, involving 'a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the . . . business relationship of another.'" Laurence G. Wolf Capital Mgmt. Trust v. City of Ferndale, 2009 WL 416785 *13, No. 282565 (Mich. Ct. App. Feb. 19, 2009) (unpublished decision) (quoting Feldman v. Green, 360 N.W.2d 881 (Mich. Ct. App. 1985)). "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." Prysak v. R.L. Polk Co., 483 N.W.2d 629, 635 (Mich. Ct. App. 1992). "To establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." Mino v. Clio School Dist., 661 N.W.2d 586, 597 (Mich. Ct. App. 2003). "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." Id. (citation omitted).

"One is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another." Laurence G. Wolf Capital Mgmt. Trust v. City of Ferndale, 2009 WL 416785 at *13 (quoting Winiemko v. Valenti, 513 N.W.2d 181 (Mich. Ct. App. 1994)).

"[T]o prevail on a claim of tortious interference with a business relationship or expectancy, a plaintiff must show more than a mere hope of establishing a business relationship in the future. The business relationship or expectancy 'must be a reasonable likelihood or probability, not mere wishful thinking.'" Id. at *14 (quoting Trepel v. Pontiac Osteopathic Hosp., 354 N.W.2d 341 (Mich.

-14-

Ct. App. 1984)). "'This must be something more than a mere hope or the innate optimism of the salesman.'" Id. (quoting Schipani v. Ford Motor Co., 302 N.W.2d 307 (Mich. Ct. App. 1981)).

As noted earlier, counsel for Omega agreed on the record at the oral argument to dismiss all of the individual defendants from Count III, leaving only Kirtland, AlixPartners and PNC as defendants in Count III. The Mayco Defendants and the AlixPartners Defendants each make a number of arguments in support of their motions to dismiss Count III that are similar to their arguments in connection with Count I. Three of these arguments are dispositive.

First, like Count I, Count III consists of a formulaic recitation of the elements of a cause of action, but does not allege facts regarding the intentional conduct of any of the defendants. The first amended complaint alleges in numerous places that Mayco breached the CRA and that Mayco kept the pass through payments. Although paragraph 68 in Count III alleges that the Mayco Defendants and the AlixPartners Defendants "wrongfully interfered with the CRA and caused" Mayco to breach the CRA, it does not allege with specificity any facts to support this conclusion. The first amended complaint simply does not contain any factual content regarding an essential aspect of a cause of action for tortious interference with a business relationship or expectancy: either wrongful conduct itself or lawful conduct done with malice. Further, like Count I, even the conclusory allegations in paragraph 68 of Count III are premised by the qualifying phrase "upon information and belief."

Second, again like Count I, there is no allegation in Count III that any of the defendants named in it acted in any way for their own benefit. All of the allegations in the first amended complaint either directly or inferentially state that the defendants' conduct was in furtherance of Mayco breaching the CRA and keeping the post-CRA pass through payments for itself, and not for

-15-

the purpose of creating any benefit for any of the defendants. Kirtland is alleged to be Mayco's parent, and AlixPartners is alleged to be Mayco's financial advisor. There is no allegation in the first amended complaint that any conduct by them, or by any of the individual defendants, was undertaken by them for any purpose other than a legitimate business purpose. There is no allegation that any of them would somehow derive a benefit by Mayco keeping the post-CRA pass through payments.

Finally, an essential element of a cause of action for tortious interference with a business relationship or expectancy is the existence of a business relationship or expectancy that is not predicated on a contract. In this case, Omega's right to expect Mayco to pay to it the post-CRA pass through payments is based entirely on a contract – the CRA. It is not an expectancy, but an existing contract. Count III describes no other business relationship or expectancy and, therefore, an essential element of this cause of action is missing.

In sum, the Court holds that Count III must be dismissed against all of the Mayco Defendants and the AlixPartners Defendants because it does not contain sufficient factual content to plausibly suggest a claim of tortious interference with a business relationship or expectancy.

D.     <u>Count IV – Fraudulent Misrepresentation</u>

The elements of a prima facie case of fraudulent misrepresentation are that:

    (1)    a defendant made a material representation;

    (2)    that was false;

    (3)    at the time the material representation was made, the defendant knew it was false or made it recklessly with disregard of its truth or falsity;

    (4)    the defendant intended the plaintiff to act on the representation;

    (5)    the plaintiff reasonably relied on defendant's representation; and

(6)     the plaintiff suffered damages.

Derderian v. Genesys Health Care Sys., 689 N.W.2d 145, 155-56 (Mich. Ct. App. 2004); see also

Novak v. Nationwide Mut. Ins. Co., 599 N.W.2d 546, 554 (Mich. Ct. App. 1999) (requiring

plaintiff's reliance on representation to be reasonable).

"Generally, a claim of fraud cannot be based on a promise of future conduct." Derderian v.

Genesys Health Care, 689 N.W.2d at 156 (citing Hi-Way Motor Co. v. Int'l Harvester Co.,

247 N.W.2d 813 (Mich. 1976)). "An exception to this rule exists, however, if a promise is made in

bad faith without the intention to perform it." Id. "[E]vidence of fraudulent intent, to come within

the exception, must relate to conduct of the actor 'at the very time of making the representations,

or almost immediately thereafter.'" Id. (quoting Hi-Way Motor Co., 247 N.W.2d at 817). A plaintiff

must demonstrate that, at the time the defendant made the alleged promises, he did not intend to

fulfill them. Id. "[E]vidence of a broken promise is not evidence of fraud." Id. (citation omitted).

Paragraph 71 of Count IV alleges three separate misrepresentations: first, that Mayco would

turn over all post-CRA pass through payments to Omega; second, that Mayco had not received any

post-CRA pass through payments; and third, that it was safe for Omega to keep shipping to Mayco

because the CRA was a legally binding document. The first of these three statements consists of a

promise of future conduct by Mayco. It is a statement promising Mayco's performance in the future.

It is not actionable as a misrepresentation unless it is within the so-called bad faith exception that

exists where it is alleged that the promise of future performance was made with fraudulent intent or

with no intention of fulfillment. The first amended complaint does not allege sufficient facts to

bring the alleged misrepresentation regarding Mayco's future performance within the so-called bad

faith exception to the rule.

-17-

In contrast, the second alleged misrepresentation in paragraph 71 does not pertain to a promise of future conduct, but instead pertains to events that had already occurred. The second alleged specific misrepresentation is that Mayco "had not received" post-CRA pass through payments, when in fact it had received them. This does not relate to any future conduct of Mayco but purports to describe events that had already occurred. Paragraph 46 of the first amended complaint alleges that this statement was a "lie[]." Paragraph 71 goes on to allege that this lie was told by Roberts, both in an individual capacity and somehow "on behalf of Kirtland," and by Abbey, again both in an individual capacity and somehow "on behalf of Alix Partners." The first amended complaint alleges that this was a material statement that was false, was known to be false, was made with the purpose of having Omega rely upon it, that Omega did rely upon it, and that Omega suffered damages as a consequence. Unlike the first alleged misrepresentation in paragraph 71 of the first amended complaint, this second alleged misrepresentation can support a cause of action for fraudulent misrepresentation, provided that it is made with sufficient specificity to meet the requirements of Fed. R. Civ. P. 9(b). <u>United States ex rel. SNAPP, Inc. v. Ford Motor Co.</u>, 532 F.3d 496, 504 (6th Cir. 2008) (explaining that as long as a plaintiff "pleads sufficient detail—in terms of time, place and content [of the alleged misrepresentation]—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met").

The first amended complaint does not contain an allegation of a specific date when the second misrepresentation was made. Instead, various paragraphs of the first amended complaint generally allege that it was made sometime between May, 2006 and July 26, 2006. Paragraph 43 alleges that Pappini contacted Roberts and Abbey several times in July, 2006 to obtain information about whether Mayco had received any post-CRA pass through payments. Paragraph 44 alleges that

-18-

both Pappini and Cecchin periodically contacted Roberts and Abbey between May and July 26, 2006 to follow up on the post-CRA pass through payments and payments on the promissory note as required by the CRA. Paragraph 47 alleges that once Mayco stopped making payments under the CRA, Omega informed Mayco that it intended to withhold the shipment of tools. Paragraph 48 alleges that in response to Omega's decision, both Roberts and Abbey then contacted Cecchin and represented to him that "Mayco had not received" the post-CRA pass through payments. Paragraph 49 alleges that "as a result of and in reliance on the representations made by Roberts and Alix Partners," Omega extended new credit to Mayco by building or shipping new tools "between April 28, 200[6] and July 200[6]."[2] A fair reading of these paragraphs taken together permits the Court to infer that the second misrepresentation alleged in paragraph 71 occurred sometime between the beginning of May, 2006 and the end of July, 2006. The first amended complaint therefore does plead the time of the second misrepresentation alleged in paragraph 71.

The first amended complaint does not expressly allege the place or the manner of the second misrepresentation. However, like the allegations regarding when the second misrepresentation took place, inferences about the place and manner of this misrepresentation may be drawn from several paragraphs in the first amended complaint. Paragraph 33 contains detailed allegations regarding face-to-face meetings, telephone calls, conference calls and e-mails among the parties to this adversary proceeding. Admittedly, that paragraph does not specifically refer to communications regarding post-CRA pass through payments. Nor does the first amended complaint specifically identify a particular meeting, telephone call or e-mail in which the alleged misrepresentation was

---

[2] A typographical error must exist in paragraph 49 because the time period is indicated as 2005, which is inconsistent with all of the other allegations in the first amended complaint that state the relevant time period as being 2006.

made. However, when all of the paragraphs of the first amended complaint are read together, the requirements of Rule 9(b), as construed by the Sixth Circuit Court of Appeals, are met: the first amended complaint alleges that this misrepresentation was made on one or more occasions during the periodic communications that took place between Omega, on the one hand, and Roberts and Abbey, on the other hand, between May, 2006 and July 26, 2006. That is sufficient detail for the Mayco Defendants and the AlixPartners Defendants to prepare an informed responsive pleading and begin a competent defense.

Viewing all of these factual allegations in the first amended complaint in the light most favorable to Omega, as the Court is required to do under the Rule 12(b)(6) standard, these allegations as a whole fulfill the requirements of Fed. R. Civ. P. 9(b) and are sufficient to plausibly state a claim that suggests "a right to relief above [a] speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). Therefore, as to the second alleged misrepresentation identified in paragraph 71 of Count IV of Omega's first amended complaint, the Court concludes that the Mayco Defendants and the AlixPartners Defendants are not entitled to dismissal under Fed. R. Civ. P. 12(b)(6).

There is a third alleged misrepresentation also contained in Count IV. The third misrepresentation is that "it was safe for Omega to keep shipping to Mayco because the CRA was a legally binding document." Omega's first amended complaint does not allege that the statement that the CRA was a "legally binding document" was false. Rather, it appears that the first amended complaint alleges that it was the statement that it was "safe" for Omega to ship because of this legally binding document that constitutes the false statement. A fraud claim cannot be predicated on an alleged misrepresentation regarding an opinion or the legal effect of a written instrument. Van

Tassel v. McDonald Corp., 407 N.W.2d 6, 8 (Mich. Ct. App. 1987) ("An action for fraud may not be predicated upon the expression of an opinion."); Krushew v. Meitz, 268 N.W. 736, 738 (Mich. 1936) ("As a general rule, fraud cannot be predicated upon misrepresentations as to matters of law."). This third alleged misrepresentation therefore does not support a claim for fraudulent misrepresentation.

In sum, the Court finds that Count IV does state a claim for fraudulent misrepresentation based upon the allegation that the Mayco Defendants and the AlixPartners Defendants represented that Mayco had not received post-CRA pass through payments when in fact it had received them. This factual allegation along with the other factual allegations in the first amended complaint that expand on the other elements of a fraudulent misrepresentation cause of action, plausibly suggest an entitlement to relief. Accordingly, the Court concludes that Count IV should not be dismissed in its entirety, but should be dismissed only to the extent that it is based upon either promises of future conduct by Mayco, expressions of opinion, or statements of the legal effect of the CRA.

E.     Count V – Fraudulent Misrepresentation

Although Counts IV and V are styled as "Fraudulent Misrepresentation," they name different defendants and are based upon different alleged misrepresentations. Count V seeks relief against Roberts, Fines, Abbey, Kirtland, AlixPartners and PNC, and defines those defendants as the "Inducement Defendants." The alleged misrepresentations contained in Count V all relate to promises made by the Inducement Defendants that led Omega to enter into the CRA with Mayco on April 28, 2006. All of the alleged misrepresentations referred to in Count V consist of promises of future conduct by Mayco under the CRA. For that reason alone, this count does not state a claim upon which relief can be granted. The facts alleged in this count are woefully inadequate to

-21-

plausibly state a cause of action for fraud. There are no allegations of any specific statements made by any of the so-called Inducement Defendants nor any allegations as to when, where or how they made such statements. There are simply insufficient facts pled in Count V for a claim for fraudulent misrepresentation and, to the extent that any facts are pled, they relate solely to promises of future conduct by Mayco. For these reasons, the Court finds that the Mayco Defendants and the AlixPartners Defendants are entitled to dismissal of Count V.

      F.    <u>Count VI – Conversion</u>

Under Michigan common law, "[c]onversion is defined as 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.'" <u>Lawsuit Financial, L.L.C. v. Curry</u>, 683 N.W.2d 233, 242 (Mich. Ct. App. 2004) (quoting <u>Foremost Ins. Co. v. Allstate Ins. Co.</u>, 486 N.W.2d 600 (Mich. 1992)). Conversion "occurs at the point that such wrongful dominion is asserted." <u>Brennan v. Edward D. Jones & Co.</u>, 626 N.W.2d 917, 918 (Mich. Ct. App. 2001) (internal quotation marks and citation omitted). "'The gist of conversion is the interference with control of the property.'" <u>Sarver v. Detroit Edison Co.</u>, 571 N.W.2d 759, 762 (Mich. Ct. App. 1997) (quoting Prosser & Keeton, <u>Torts</u> (5th ed.) § 15, p.102)).

"To support an action for conversion of money, the defendant must have obtained the money without the owner's consent to the creation of a debtor-creditor relationship and must have had an obligation to return the specific money entrusted to his care." <u>Lawsuit Financial v. Curry</u>, 683 N.W.2d 2d at 240 (internal quotation marks and citation omitted). Even though conversion is an intentional tort, "one can also commit this tort while being unaware of the plaintiff's property interest." <u>Id.</u> (citing <u>Foremost Ins. Co. v. Allstate Ins. Co.</u>, 486 N.W.2d at 600).

-22-

Paragraph 85 of Count VI alleges that the Mayco Defendants and the AlixPartners Defendants "intentionally and tortiously exercised dominion and control" over the post-CRA pass through payments received by Mayco after the CRA was entered. However, it does not state *how* any of these defendants exercised dominion and control over the post-CRA pass through payments received by Mayco. In fact, the first amended complaint repeatedly and unequivocally alleges that *Mayco* received the pass through payments, and that *Mayco* utilized the pass through payments to pay other obligations of *Mayco*. Nowhere does the first amended complaint allege any facts to show that the Mayco Defendants or the AlixPartners Defendants ever possessed or obtained the post-CRA pass through payments or otherwise exercised dominion or control over any payments received by Mayco from its Customers. Because the first amended complaint alleges that Mayco received all of the post-CRA pass through payments, and that Mayco used those pass through payments to pay its other obligations, Omega may be entitled to relief against Mayco, but it has failed to plead a plausible claim for conversion against either the Mayco Defendants or the AlixPartners Defendants in the first amended complaint.

G.    Count VII – Silent Fraud

To prove a silent fraud claim, a plaintiff must establish that a defendant

(1)    possessed a legal or equitable duty to disclose;

(2)    but concealed or suppressed the truth;

(3)    of a material fact;

(4)    through false or misleading statements or actions; and

(5)    with the intent to deceive.

M&D, Inc. v. W.B. McConkey, 585 N.W.2d 33, 37 (Mich. Ct. App. 1998).

In order to prevail on Count VII, silent fraud, the very first element is a duty to disclose. The first amended complaint does not allege facts that plausibly suggest that either the Mayco Defendants or the AlixPartners Defendants owed a duty to disclose to Omega. Instead, the first amended complaint simply alleges that a duty exists "in the circumstances." This does not explain how or why the circumstances of this case give rise to a duty to disclose or to whom such duty is owed. This is especially true with respect to the AlixPartners Defendants. AlixPartners was the financial advisor to Mayco. There are no facts pled that give rise to a duty on the part of the financial advisors to Mayco to disclose facts to a creditor of Mayco such as Omega. Nor does Count VII plead any facts to support the bald assertion that any of the Mayco Defendants or the AlixPartners Defendants had any legal or equitable duty to disclose any facts to Omega. Therefore, the Court finds that Count VII must be dismissed as to both the Mayco Defendants and the AlixPartners Defendants.

## VIII. CONCLUSION

Omega was not paid substantial amounts owed to it by Mayco for the purchase of plastic injection molds. Omega is understandably unhappy with that result, and with the fact that Mayco's bankruptcy proceeding has now concluded, and the claims of Omega in that bankruptcy case do not appear to be paid in full. However, those facts by themselves do not mean that Omega may recover the amounts that Mayco owes to it, either from employees of Mayco, the shareholder of Mayco, or the financial advisors to Mayco. After carefully reviewing Omega's first amended complaint, and after considering all of the arguments raised in the various briefs that were filed, the Court concludes that the only claim against either the Mayco Defendants or the AlixPartners Defendants that can survive the two motions to dismiss under Rule 12(b)(6) consists of the claim

-24-

in Count IV that certain of those defendants made a material misrepresentation to Omega. The misrepresentation identified in paragraph 71 of Count IV is that "Mayco had not received Post-CRA Pass Through Payments when in fact it had." Similarly, paragraph 46 of the first amended complaint alleges that Roberts and Abbey "lied" to Omega about the $1.46 million of post-CRA pass through payments that Mayco had received. Therefore, the first amended complaint alleges a material statement that was false, was known to be false at the time that it was made, was made with the intention that Omega rely upon it, that Omega did rely upon it, and that Omega suffered damages as a consequence. The first amended complaint alleges that this misrepresentation was made during the time from May, 2006 through July 26, 2006, and that it was made by Roberts and Abbey to Cecchin and Pappini from Omega. The first amended complaint alleges sufficient facts regarding this alleged misrepresentation to plausibly suggest a claim. That is enough to sustain the motions to dismiss under Rule 12(b)(6). However, the other counts set forth in the first amended complaint do not have sufficient factual content to state claims that are facially plausible. Therefore, the Court concludes that the motions to dismiss filed by the Mayco Defendants and the AlixPartners Defendants should be granted, except that Count IV should continue solely with respect to the alleged misrepresentation that Mayco had not received post-CRA pass through payments when in fact it had received such payments. In reaching this conclusion, the Court carefully reviewed the first amended complaint, paragraph by paragraph, and considered all of the parties' arguments, regardless of whether or not they are specifically referred to in this opinion.

The Court submits these proposed conclusions of law pursuant to Fed. R. Bankr. P. 9033(a) and Local District Rule 83.50(a)(3)(B). The Court will prepare and file a separate proposed order consistent with these proposed conclusions.

Signed on January 11, 2010

                              /s/ Phillip J. Shefferly
                         Phillip J. Shefferly
                         United States Bankruptcy Judge